UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAMPAGNOLO S.R.L., <br><br> Plaintiff, <br><br> v. <br><br> FULL SPEED AHEAD, INC., a Washington Corporation, and, TIEN HSIN INDUSTRIES CO., LTD., a company of Taiwan, <br><br> Defendants. | CASE NO. C08-1372 RSM <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF DECEMBER 18, 2009 ORDER |

This matter comes before the Court on Plaintiff's Motion for Reconsideration of the Court's December 18, 2009 discovery order (Dkt. #174). Plaintiff contends that the Court committed clear error in granting Defendant Full Speed Ahead, Inc.'s ("FSA") motion to compel Plaintiff's sales and distribution information and also in denying Plaintiff's motion for a protective order to prevent discovery of weight variance data. (*See* Discovery Order, Dkt. #169). Pursuant to Local Rule CR 7(h) the Court requested that Defendants file a response addressing the sales and distribution information issue only. The Court addresses each issue separately to decide whether there was "manifest error" in the Court's prior ruling. Local Rule CR 7(h).

ORDER
PAGE - 1

# I. FSA'S MOTION TO COMPEL SALES AND DISTRIBUTION INFORMATION

In its discovery order (Dkt. #169), the Court held that Plaintiff's sales and distribution information is relevant and discoverable even though Plaintiff has stipulated that it will not seek damages in the form of its lost profits. The Court reasoned that the sales and distribution information was relevant to show that Plaintiff did not suffer injury, an element of Plaintiff's false advertising claim. Specifically, the Court held that the evidence is relevant because (1) any presumption that Plaintiff was injured is rebuttable, (2) disgorgement damages are not available without proof that the defendant gained sales or the plaintiff lost sales, and (3) if Plaintiff could not prove deliberate falsity and therefore did not receive a presumption of injury, the evidence would be relevant to show there was no injury. (Dkt. #169 at 7-8).

Plaintiff contends that the Court did not follow *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997), and other Ninth Circuit precedent in holding that a presumption of injury could be rebutted by evidence that the plaintiff did not lose sales. According to Plaintiff, once a plaintiff proves that advertisements were deliberately false, it is entitled to a presumption of "consumer deception and reliance" which allows for monetary recovery, and this presumption may only be rebutted by survey evidence showing absence of consumer deception or confusion, not sales data. Plaintiff also contends this Court erred in relying on *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683 (6th Cir. 2000), because, according to Plaintiff, the Sixth Circuit's approach to monetary recovery in false advertising cases is "fundamentally different" than the Ninth Circuit's. (Dkt. #174 at 4).

After reviewing Plaintiff's motion for reconsideration and FSA's response and reexamining the case law cited by Plaintiff, the Court disagrees with Plaintiff's position. It is clear under Ninth Circuit precedent that to make out a false advertising claim a plaintiff must show, among other things, that the advertisement "actually deceived or has a tendency to deceive a substantial segment of the audience," and that "the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland* 108 F.3d at 1139. The consumer deception element and the injury element are separate. "In a suit for

ORDER
PAGE - 2

damages under section 43(a), . . ., actual evidence of some injury *resulting from the deception* is an essential element of the plaintiff's case." *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989).

In *Harper House*, the Court of Appeals for the Ninth Circuit affirmed the jury's finding that the defendants' practice of advertising one model of organizer, Time Maker I, and then delivering a slightly different version, Time Maker II, constituted deliberately false advertising. *Id.* at 208. The Court further held that even though there had been no evidence presented to the jury that consumers were deceived or that consumers complained, such evidence was not required because the fact that the defendants expended funds to deliberately deceive consumers justifies a presumption that the consumers were actually deceived. *Id.* at 209 (*citing U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041) (9th Cir. 1986). However, despite the fact that the jury could find, through a presumption, that consumers were deceived, the court reversed the jury's damages award because the plaintiff had "presented no evidence of any injury causally related to the defendants' deception." *Id.* at 210. The court reasoned that since defendants' false advertising did not directly compare plaintiff's and defendants' products, and since there were numerous competitors in the marketplace, it would be improper to presume that the plaintiff was injured – injury to any particular competitor was likely to be "slight." *Id.* at 209 n.8. Thus, *Harper House* makes clear that a showing of consumer deception does not necessarily entitle a plaintiff to damages if the plaintiff cannot show injury.

In *Southland*, the Ninth Circuit clarified that "an inability to show actual damages does not alone preclude recovery." *Southland*, 108 F.3d at 1146. In that case, like in *Harper House*, the fact that the defendant's advertisements were deliberately false entitled the plaintiff to a presumption of "consumer deception and reliance." *Id.* at 1146 (*citing U-Haul*, 793 F.2d at 1040-41). However, unlike in *Harper House*, the defendant's advertisement in *Southland* directly compared its product with the plaintiff's. *Id.* at 1137. Consistent with *Harper House*'s statement that "in cases of direct comparative advertising, the presumption that plaintiff's good will has suffered significant damages seems justified," *Harper House*, 889 F.2d at 209 n.8, the

court held that the plaintiff could recover even without showing actual damages.[1] *Id.* at 1146. Thus, in the Ninth Circuit, deliberate falsity yields a presumption of consumer deception in cases of noncomparative advertising (*Harper House*) and a presumption of consumer deception and injury in cases of direct comparative advertising (*Southland*).

This is the law in other circuits as well. In *Porous Media Corp. v. Pall Corp.*, a direct comparative advertising case, the trial court instructed the jury that if the defendant made any false statements deliberately, "then you may presume that customers and prospective customers were deceived by any such statements and that [plaintiff] has suffered damages as a result of such deception." 110 F.3d 1329, 1332-33 (8th Cir. 1997). The court of appeals first noted that this instruction contains two separate rebuttable presumptions: a presumption of consumer deception and a presumption of causation and injury. *Id.* at 1333. Relying in part on *Harper House*, the Eighth Circuit held that "[a] predicate finding of intentional deception, as a major part of the defendant's marketing efforts, *contained in comparative advertising*, encompasses sufficient harm to justify a rebuttable presumption of causation and injury in fact." *Id.* at 1336 (emphasis in original).[2]

The Sixth Circuit came to the same conclusion in *Balance Dynamics*. Quoting extensively from the Ninth Circuit's decision in *U-Haul* and citing *Southland*, the court held that a presumption of injury is warranted where there is proof of deliberate falsity and the advertisement at issue specifically targets the plaintiff's product. *Balance Dynamics*, 204 F.3d at 694. Thus, far from being "fundamentally different," the precedent of the Sixth and Eight Circuits is entirely consistent with the Ninth Circuit's.

Recognizing that Balance Dynamics and Porous Media are consistent with the Ninth Circuit, this Court may look to them as persuasive authority for whether the presumption of injury is rebuttable. It clearly is. In *Porous Media*, the court of appeals upheld a jury

---

[1] Notably, the court also held that the plaintiff did provide evidence, through expert testimony of lost sales, for a reasonable jury to conclude that plaintiff suffered actual injury. Southland, 108 F.3d at 1146.
[2] In contrast, "where a defendant is guilty of misrepresenting its own product without targeting any other specific product, it is erroneous to apply a rebuttable presumption of harm in favor of a competitor." Id. at 1134.

ORDER
PAGE - 4

instruction stating: "You are instructed that Pall may overcome the presumption . . . by evidence that Porous has not suffered any damages as a result of any such statements." *Porous Media*, 110 F.3d at 1333. In *Balance Dynamics*, the court held even though the plaintiff was entitled to a presumption of damages, the evidence showed that the plaintiff did not suffer marketplace injury because plaintiff's sales increased and there was no decrease in the price of the product. *Balance Dynamics*, 204 F.3d at 694-95.

Thus it is clear that sales data is relevant to rebut a presumption of injury. Contrary to Plaintiff's contention, nothing in *Southland* says otherwise. In fact, *Southland* explicitly states that the "presumption of actual consumer deception and reliance" is rebuttable. 108 F.3d at 1146. While Plaintiff asserts that only consumer surveys may be used to rebut the presumption, that assertion has no support. Additionally, *Southland* encourages district courts to fashion monetary relief "based on the totality of the circumstances." *Id.* This Court can see no reason why evidence that Plaintiff did not lose any sales due to the false advertising would be irrelevant to that inquiry.

Thus, because persuasive authority indicates that the presumption of injury is rebuttable by sales data, and because no case has held that the presumption is irrebuttable or rebuttable only by consumer survey data, the Court concludes that Plaintiff's sales data is relevant and discoverable.

Plaintiff also challenges the Court's ruling that its position was not substantially justified and awarding costs and attorneys' fees to Defendants. Because no case supports Plaintiff's position and because Plaintiff as the party resisting discovery needed to show that the requested information could not be potentially relevant, Plaintiff's position was not substantially justified. *See* Fed. R. Civ. Proc. 37(a)(5). Additionally, the Court notes that this case has been extremely litigious. The parties have had to call upon the court numerous times to settle discovery disputes that should have been resolved without court intervention. The Court's ruling that Plaintiff's position was not substantially justified was not manifest error.

FSA requests that it be awarded costs associated with the filing of its response to the motion for reconsideration. The Court declines to do so.

## II. PLAINTIFF'S MOTION FOR PROTECTIVE ORDER REGARDING "WEIGHT VARIANCE"

Plaintiff sought a protective order to prevent discovery of data regarding the weights of its cranksets, the variances in those weights, and manufacturing tolerances, on the grounds that such information is irrelevant. The Court stated that "[a] central issue in this case is whether the weights of Plaintiff's products that FSA reported in its advertisements were false" and thus information pertaining to those weights is clearly relevant. (Dkt. #169 at 4). In so holding, the Court rejected Plaintiff's argument that the only information relevant to the falsity of the advertisements is whether any cranksets were weighed, what the weights were, and whether those weights were correctly portrayed in the advertisement.

In its motion for reconsideration, Plaintiff reiterated and clarified its position that "[t]his case does not involve a 'line' of products; it involves the discrete products selected and tested by Defendants in support of their advertisement. No information regarding any kind of 'variance' can change the physical properties of the Campagnolo RECORD® Ultra Torque crankset allegedly tested for FSA's advertising campaign." (Dkt. #174 at 5). The Court agrees that product lines – multiple different products sold by the same company – are not at issue in this case, but it is at least debatable whether the advertisements compare specific individual cranksets or crankset *models*.

In Plaintiff's opinion, the chart advertisements and other advertisements simply inform the public of the results of a specific test conducted on specific individual cranksets. In other words, the chart advertisement is telling the public the weights of the individual cranksets actually tested, and if the weights listed do not match the test results, the advertisement is literally false. Since the individual cranksets actually tested have absolute weights, variance in the product model is irrelevant. This is certainly one interpretation of the advertisements, and evidence regarding the weights of the cranksets actually tested in support of the advertisements is clearly relevant.

But another reasonable interpretation of the advertisements is that they compare product models, for example FSA's K-Force Light and Campagnolo's Record Ultra Torque, against each other. The Court cannot rule out the possibility that a consumer viewing an advertisement as a whole would think that the ad is telling him that if he goes to purchase a crankset of one of the brands and models listed, it will weigh the amount listed in the advertisement. The consumer likely has little interest in the weight of one specific crankset measured once by a laboratory; he will not purchase the exact crankset measured in the test but a different crankset of the same model. The advertisement tells him to buy an FSA K-Force Light model crankset instead of a Campagnolo Record Ultra model crankset because, according to the advertisement, the FSA model is generally lighter and stiffer than the Campagnolo model.

Interpreting the ads as comparing product models, the central question in the case would be whether the numbers listed in the advertisements accurately portray the weights of cranksets in that model. Thus information regarding the weights of cranksets in that model as they come off the assembly line and how those weights vary is directly relevant. While it's true that no information regarding variance can change the weight of the specific cranksets weighed in support of the advertisement, such information may indicate that the measured weight of one individual crankset is not representative of the weight of all, or most, cranksets of that model.

Evidence is discoverable if it is potentially relevant or if it could potentially lead to other relevant evidence. Given this maxim and the centrality of the weight issue to this case, it is clear that the evidence is discoverable. Thus the Court reaffirms its decision to deny the motion for protective order and reaffirms its decision to impose costs because the motion was not substantially justified. The Court finds no manifest error in its original decision.

As a final matter, Plaintiff argues in its motion for reconsideration that Defendants' "variance" discovery requests should be limited to the Campagnolo crankset at issue in this case. In its original motion for a protective order, however, Plaintiff never argued that the requests at issue were overbroad. Since the parties' briefs were directed at whether discovery regarding weight variance should be allowed at all, and not to the scope of the requests, the Court never considered scope. That question is not properly before the Court here either.

## III. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Plaintiff's Motion for Reconsideration of December 18, 2009 Order (Dkt. #174) is DENIED.

(2) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this  1  day of February, 2010.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE