UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAMPAGNOLO S.R.L., <br><br> Plaintiff, <br><br> v. <br><br> FULL SPEED AHEAD, INC., a Washington Corporation, et al., <br><br> Defendants. | CASE NO. C08-1372 RSM <br><br> ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Full Speed Ahead, Inc.'s ("FSA") motion for summary judgment (Dkt. #221) and Plaintiff Campagnolo S.r.l.'s ("Campagnolo") cross motion for partial summary judgment as to liability (Dkt. #262). Campagnolo alleges that FSA violated the Lanham Act, 15 U.S.C. § 1125(a), and the Washington Consumer Protection Act, RCW 19.86.020, and engaged in unfair competition when it published false advertisements comparing its products to Campagnolo's. Because the record contains disputes of material fact, the Court denies both motions.[1]

---

[1] Defendant Tien Hsin Industries Co.'s motion for summary judgment (Dkt. #205) will be addressed by separate disposition.

ORDER
PAGE - 1

# I.  BACKGROUND[2]

**A.  Overview**

Campagnolo, an Italian company based in Vincenzo, Italy, manufactures and sells bicycle components worldwide, including the United States.  FSA is a Washington corporation that sells, but does not manufacture, bicycle parts principally in North America.  Both companies sell their products to bicycle manufacturers and aftermarket distributors, not end users.  FSA's products are manufactured by Tien Hsin Industries Co., Ltd. ("Tien Hsin"), a Taiwanese company.

Specifically relevant to this case, both companies produce a bicycle component called a "crankset."  A crankset consists of crank arms (to which pedals are attached), a chain wheel, and an axle.  It is attached to the frame of the bicycle by a bottom bracket, which is sometimes considered part of the crankset.  The crankset allows a rider to transfer the energy created by his or her pedaling into the chains of the bicycle, which in turn drives the bicycle.  The crankset is essentially the "engine" of a bicycle that propels it forward.

One important characteristic of a crankset is its stiffness-to-weight ratio.  The stiffness of a crankset is measured by the amount of bending it can withstand.  Stiffness-to-weight ratio is simply the stiffness measurement divided by the crankset's weight.  Consumers desire stiffness because it allows more energy from pedaling to be transferred to the bike and desire lightness because the cyclist needs to propel less weight.  Thus, crankset manufacturers seek to produce cranksets with a high stiffness-to-weight ratio.

In this case, FSA is accused of publishing advertisements that falsely reported the weights and stiffness-to-weight ratios of its own crankset and Campagnolo's crankset.  Specifically, Campagnolo alleges that FSA advertised weights and stiffness-to-weight ratios of

---

[2] Included with Campagnolo's motion for partial summary judgment and opposition to FSA's motion for summary judgment are various motions to exclude evidence.  The Court has already addressed many of these concerns in previous orders.  The rest of Campagnolo's evidentiary concerns are the subject of its motion in limine and need not be addressed here because it does not affect the Court's analysis.

ORDER
PAGE - 2

an early initial product model, or prototype, of its crankset which was not available in 2008, when the advertisements were published, and which was lighter than the cranksets that were available at that time. Specifically the ads claimed FSA's crankset weighed 503 grams when in fact it weighed 560 or more. Campagnolo claims the ads were also misleading in that they incorrectly stated the weight and stiffness-to-weight ratio of Campagnolo's crankset, implied that an FSA crankset of the type available for purchase in 2008 had been tested by an independent laboratory, and misleadingly claimed that FSA's crankset had been awarded a certificate based on performance.

**B.  FSA's Crankset: The K-Force Light**

In early 2006, Tien Hsin, FSA's manufacturer, began development of a crankset called the K-Force Light. The K-Force Light differed from the previous K-Force crankset in that the crank arms were hollowed-out rather than solid, making them lighter. On February 10, 2006, a prototype version of the K-Force Light was internally tested for durability by Tien Hsin. As part of that test, the weight of the crankarms and chainring, in other words the crankset without the bottom bracket or removable parts, was measured to be approximately 502.5 grams. The prototype K-Force Light had a cromoly steel axle.

Sometime in 2006, Tien Hsin began an initial production run of the K-Force Light. Exactly when the initial production run took place and how many cranksets were produced is the subject of some dispute and confusion. Mr. Van Enkevort, FSA's managing director, testified that the initial production run and prototype production run were the same thing and that these cranksets were not shipped to retailers. Additionally, he testified that "some hundred or more" cranksets were made of the initial production model. Similarly, Mr. Tsai, Tien Hsin's manager of research and development, uses the terms "prototype" and "initial production run model" interchangeably in his declaration (Dkt. #229 ¶ 5). He testified at his deposition that only 100 prototype cranksets were manufactured. On the other hand, other evidence indicated that the initial production run consisted of 550 cranksets in 2006 and another 550 or so in 2007.

ORDER
PAGE - 3

At some point in 2006, Tien Hsin sold or delivered some number of K-Force Light cranksets to FSA and Full Speed Ahead, S.r.l. ("FSA-Europe"), an Italian company that sells the Full Speed Ahead brand in Europe much the same way FSA does in North America.  In October 2006, one of these initial production models K-Force Light cranksets was sent to EFBe Prüftechnik ("EFBe"), a German testing company of some notoriety in Europe.  EFBe tested the K-Force Light along with five competing cranksets, including Campagnolo's Record Ultra Torque crankset, for stiffness and weight.  EFBe tested each crank arm separately for stiffness and took separate weight measurements for the bottom bracket – a removable part of the crankset – and the rest of the crankset.  In November 2006, EFBe published the test results, which indicated that the K-Force Light weighed 503 grams without the bottom bracket and 633 grams total.  EFBe did not calculate stiffness-to-weight ratios.  It only provided weight measurements and separate stiffness measurements for each crank arm.

Late in 2006, shortly after the EFBe testing, Tien Hsin and FSA made changes to the K-Force Light.  Additional carbon was added to the inside of the crank arms to make it stiffer and more durable without altering its appearance.  This stiffened version still had a steel axle.  The addition of carbon increased the weight by some uncertain amount.  Some witnesses estimated this amount to be in the range of 25-40 grams, which is consistent with an internal test measuring the weight of the crankset to be approximately 525-535 grams without the bottom bracket.  A 2008 EFBe test, however, indicated that the stiffer version of the K-Force light, with a steel axle, weighed 593 grams, suggesting that the weight increased by possibly as much as 90 grams.[3]  That same test measured the weight of the bottom bracket to be 98 grams.  FSA's 2008 product catalog also listed the crankset's weight, with bottom bracket included, as 660 grams, which, after subtraction, implies that the weight without the bottom bracket was

---

[3] Screws and bolts attach the crankset to the bottom bracket.  When weight measurements are taken of the crankset and bottom bracket separately, the record is not clear whether these screws are weighed as part of the crankset or part of the bottom bracket.  The screws and bolts weight approximately 30 grams.  An e-mail from EFBe to Mr. Sala, one of FSA-Europe's employees, indicated that the 2006 EFBe test weighed all screws with the bottom bracket. It is unclear whether this practice was repeated in later tests, however, and the fact that the bottom bracket weight appears to have decreased from 130 grams to 98 grams suggests that perhaps the bolts were weighed as part of the crankset.

ORDER
PAGE - 4

approximately 562 grams. Tien Hsin and FSA did not change the model or part number for the K-Force Light when it underwent the design change of adding additional carbon.

At some point in 2007 or 2008, the timing of which is heavily disputed, FSA introduced a titanium axle version of the K-Force Light. The titanium axle is more expensive than steel but it is both stiffer and lighter. Witnesses estimated that the titanium axle reduced the weight of the K-Force Light by 45-50 grams, although no tests were conducted on the axles alone specifically to confirm this. An independent test conducted by Intec in 2009 for purposes of this litigation measured the weight of the titanium model as approximately 500 grams without the bottom bracket or removable parts. Thus, based on the 2006 EFBe test and the 2009 Intec test, the titanium version of the K-Force Light available in 2007 or 2008 weighed slightly less than the steel axle initial production model and was stiffer.

Evidence regarding when exactly the titanium K-Force light became available to consumers is conflicting and inconclusive. Tsai testified that Tien Hsin developed the titanium model at the same time that it stiffened the K-Force Light, in late 2006. Van Enkevort, on the other hand, testified that FSA did not hear about the development of a titanium axle until June 2007. FSA received its first shipment of less than ten titanium cranksets in December 2007. Tsai testified that FSA placed volume orders of the titanium crankset in "spring 2008." A May 23, 2008 "Newsflash" press release announced the release of the K-Force Light titanium crankset and described it as a "brand new" product that "just arrived in stock." The 2008 Tien Hsin Bike Solutions Guide, published in March 2008, which contains technical information for all Tien Hsin's products and is relied upon by FSA and FSA-Europe as "the most accurate information available," does not mention any titanium axle crankset.

Although the Court, for clarity, refers to the various manifestations of the K-Force Light as different versions or models – e.g. the initial production model; the revised, stiffer model with steel axle; and the titanium-axle model – FSA considers the K-Force Light to be all one "model" of crankset.[4] When the design of the K-Force Light was changed from the initial

---

[4] For example, other models FSA sells include the SL-K, Team Issue, Gossamer, etc.

ORDER
PAGE - 5

production model to the stiffer version with additional carbon fiber layers, FSA did not change the product number or the name.  When versions with titanium axles became available, FSA used the same part number, but added "ti" to the end.

### C. Campagnolo's Crankset: The Record Ultra Torque

Campagnolo produces the Record Ultra Torque crankset.  Notably it is designed differently than the K-Force Light in that its axle is divided into two semi-axles that are permanently affixed to each crank arm.  The bearings are also permanently affixed to each crank arm rather than located in the bottom bracket.  Because of this design difference, when cranksets are weighed without the bottom bracket, the weight of Campagnolo's is overstated relative to FSA's.  The weight of Campagnolo's bottom bracket is correspondingly understated, and the comparison of total weight is unaffected by the design difference.  The Record Ultra Torque crankset weighed 652 grams without its bottom bracket (but with the permanently affixed bearings) when tested by EFBe in 2006.  It measured only 632 grams when tested by Intec in 2009.

### D. Weight Variance

Not every crankset that comes off the assembly line weighs precisely the same amount.  Crankset manufacture often involves hand-application of carbon fiber, which yields more variation than machine manufacture.  The amount of the variance is unclear.  Some evidence indicates that visually identical cranksets can vary in weight by about ten grams.  Witnesses also testified that cranksets of the same model can vary by as much as 80 grams depending on certain features – e.g. a Record Ultra Torque with 175 millimeter crank arms will weigh more than a Record Ultra Torque crankset with 170 millimeter crank arms.  Those large variations are not differences in manufacturing so much as observable differences in products that have a common model name.

### E. The Advertisements

FSA began circulating the first advertisements relevant to this case in cycling magazines around January or February 2007. Those advertisements, dubbed the "Nothing Ads," lauded the fact that the K-Force Light had hollow crank arms with "nothing" inside and claimed that "nothing" is stiffer, lighter, smoother, or stronger. These ads claimed that testing conducted by EFBe confirmed that the K-Force Light had a better stiffness-to-weight ratio than various competitors' cranksets, although the advertisement did not specifically list Campagnolo. They also listed the K-Force Light as weighing 630 grams, approximately the amount measured by the November 2006 EFBe test. These advertisements did not prompt Campagnolo to bring this suit, but they are nonetheless relevant to put FSA's advertising campaign in context.

The advertisements that prompted this lawsuit were not circulated until March and April 2008. The "Chart Ads" displayed horizontal bar charts comparing the weight, stiffness, and stiffness-to-weight ratio of the K-Force Light against four other cranksets, including the Campagnolo Record Ultra Torque. The chart listed the weight of the K-Force Light as 503 grams without bottom bracket, taken from the 2006 EFBe test. It also listed weight data for competitor's cranksets as measured by the EFBe test. The chart also listed a stiffness measurement for each crankset, which was the average of the stiffness of each crank arm as tested in the EFBe test. Finally, it listed the stiffness-to-weight ratio, calculated by FSA by dividing the average stiffness by the weight, and represented this graphically. The Chart Ads displayed pictures of the various brands of cranksets being tested in EFBe's laboratory. Text on the advertisements explained that "Full Speed Ahead is proud to present a test by the independent test facility EFBe Prüftechnick GmbH." It further explained the importance of a crankset that is both stiff and light and that the K-Force Light was found to have the highest stiffness-to-weight ratio of all the cranksets in the EFBe test. Finally, the ad stated that the K-Force Light received a "top performance" certification from EFBe and explained that this recognition is given "only to products with the highest quality and performance." EFBe did award the K-Force Light a "top performance" award for passing a computer-controlled fatigue test, which had little or nothing to do with stiffness or weight.

Other advertisements, referred to as the "Weight Ads" did not specifically compare the K-Force Light to any of its competing cranksets. The ads did, however, state that the K-Force Light was 4% lighter and had a 13% higher stiffness-to-weight ratio than "similar" carbon cranksets.

Both the Chart Ads and Weight ads, which were published in cycling magazines, referred consumers to FSA's web site. On that web site, during March through May 2008 and possibly other times, were advertisements and information similar to the print ads. A downloadable brochure on the web site repeated the text published in the Chart Ads regarding EFBe testing and listed the weight of the K-Force Light as 630 grams (presumably with bottom bracket included). The web site itself repeated the information and graphics of the Nothing Ads and gave details regarding the EFBe testing. Importantly, none of the advertisements at issue in this case clarified whether a K-Force light with a steel or titanium axle was being advertised. FSA's witnesses, however, testified at deposition that the advertisements were intended to publicize the titanium-axle K-Force Light, FSA's "top end" model, and that they believed the advertisement to be accurate because the titanium-axle K-Force Light weighed less and was stiffer than the crankset tested by EFBe. They testified that it was simple math to conclude that adding approximately 40 grams worth of carbon fiber and then subtracting 40-45 grams of weight to account for the difference between the steel and titanium axle left the 2008 titanium K-Force Light at approximately the same weight as the 2006 model.

**F.  The Experts**

Campagnolo hired Dr. Glassman to provide expert testimony regarding the effect of FSA's advertisements on consumers. Dr. Glassman surveyed readers of one of the cycling magazines in which FSA's ads were published. Based on those surveys, he concluded that (1) weight claims, regardless of stiffness or stiffness-to-weight ratio claims, were material to the purchasing decision of consumers; (2) relevant consumers think the information presented in the FSA ad campaign is accurate; (3) consumers expect the advertised product to be available for purchase when the ads are published and expect them to perform as advertised; (4) the

ORDER
PAGE - 8

Chart Ads are likely to cause cycling enthusiasts to buy the K-Force Light over competing cranksets; and (5) the claim that the product was tested by an independent German company would increase the likelihood someone would buy the product because it indicates the figures are accurate and unbiased.

FSA's expert, Mr. Hammerquist, the president of an advertising agency, contested Dr. Glassman's interpretations of his own data. He also testified that it is common in the sports products industry to advertise a product before it is available for sale in order to create demand for the product immediately upon its release.[5]

## II. DISCUSSION

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FRCP 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994). Mere disagreement, or the bald assertion that a genuine issue of material fact exists, does not preclude the use of summary judgment. *See Coverdell v. Dept. of Social and Health Servs.*, 834 F.2d 758, 769 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson, 477 U.S. at 248*. Material facts are those which might affect the outcome of the suit under governing law. *Id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing O'Melveny & Meyers*, 969 F.2d at 747). The mere fact that the parties make cross-motions for summary judgment does not mean there are no disputed

---

[5] The Court also reviewed testimony of FSA's damages expert, but does not recite those opinions here because they are not necessary for this disposition.

ORDER
PAGE - 9

issues of material fact, nor does it permit the court to render judgment as a matter of law in favor of one party or the other. *Starsky v. Williams*, 512 F.2d 109, 112 (9th Cir. 1975).

The elements of a Lanham Act § 43(a) false advertising claim are: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).[6]

## A. Falsity

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers. *Id.* Whether an advertisement is false is an issue of fact. *Clorox Co. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 34 (1st Cir. 2000); *see Southland Sod*, 108 F.3d at 1144. The first question is: what does the person to whom the advertisement is addressed find to be the message? *See Johnson & Johnson Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d. Cir. 1992). Second, the trier of fact must decide whether that message is literally false, or if not, whether it is misleading.

In this case, the message of the advertisements is a disputed issue because it is unclear what version or model of the K-Force Light is being advertised. Campagnolo argues strenuously that the FSA ad campaign advertises the initial production model K-Force Light, or if not that, then it advertises a K-Force Light with a steel axle, since that was the only model available when the ads were circulated. FSA contends that the advertisements were pushing

---

[6] The parties agree that the advertisements at issue entered interstate commerce.

ORDER
PAGE - 10

the K-Force Light with a titanium axle and the EFBe data, although measured for the initial production model with a steel axle, was essentially accurate for the newer titanium model. The factual dispute regarding what was being advertised underlies numerous disputes of material fact regarding the truth or falsity of the advertisements.

To begin, the Court examines the facts in the light most favorable to FSA, taking all inferences in its favor, to determine whether a rational jury could conclude that the advertisements were materially truthful. A reasonable jury could find the following facts. It is common for manufacturers to advertise products shortly before they are made commercially available. Around the time of the 2008 advertisements, or shortly thereafter, FSA had a K-Force Light crankset with a titanium axle on the market. That crankset weighed approximately 500 grams without bottom bracket and 620 grams with the bottom bracket, less than FSA's initial production model. That crankset was also stiffer than the initial production model because it contained additional layers of carbon. A consumer reading the 2008 advertisements would understand their message to be that the best available K-Force Light crankset (the version with a titanium axle) is lighter and stiffer than its competition and that this result is supported by testing from an independent laboratory. The weights and stiffnesses listed in the advertisements are accurate as tested by EFBe except that they slightly understate the performance characteristics of the K-Force Light with titanium axle. The jury could conclude that a conservative statement of the K-Force Light's properties, where the weight difference is well within normal manufacturing tolerance, is not false or is not false in a material way. The jury could conclude that when FSA advertised the steel-axle K-Force Light, it correctly listed it as weighing 660 grams with bottom bracket included.

The jury believing FSA's evidence could also conclude that the measurements of Campagnolo's crankset were literally true and not misleading because they came from an independent laboratory. It could conclude that the statement that the K-Force Light received a "top performance" award for "quality and performance" is true and not misleading. Since, viewing the evidence in the light most favorable to FSA, a jury could rationally conclude that

the advertisements were materially accurate, the Court denies Campagnolo's motion for partial summary judgment.[7]

On the other hand, viewing the facts in the light most favorable to Campagnolo and making inferences in its favor, a rational jury could find that the advertisements were false in numerous ways. First, a reasonable jury could find that FSA's notion that the advertisements concerned the titanium version of the K-Force light is a fabrication created during litigation. The advertisements do not mention the word titanium. The advertisements are based on tests conducted on cranksets with steel, not titanium, axles. FSA's outside advertising firm was not aware that the ads related to a titanium crankset. Advertisements containing the same data, graphics, and language were published in February 2007 when it is undisputed that no titanium-axle K-Force Lights existed. Additionally, the jury could conclude based on FSA's "Newsflash" press release that a titanium-axle K-Force Light was not available until the end of May 2008. Since in March 2008, when comparative advertisements were published, the only K-Force Light available had a steel axle, and since the advertisements significantly understated the weight of the steel-axle crankset, the advertisements were literally false.

Second, even if the jury concludes that relevant consumers would understand the advertisement as referring to the top model, titanium-axle K-Force Light, it could still find the advertisements literally false because the advertisements state that EFBe testing confirmed the data displayed in the ads when in fact EFBe had not tested a titanium-axle K-Force Light. Third, a jury could conclude that the advertisements are literally false in conveying that a version of the K-Force Light tested by EFBe and having the listed properties was commercially available for sale. The jury could conclude that the tested version was a prototype of which 100 copies were produced and never sold. Fourth, the evidence supports a finding that the advertisements are literally false in conveying that EFBe, an unbiased independent laboratory, calculated the stiffness-to-weight ratios displayed in the advertisements. In fact, a jury could

---

[7] Because a jury could find for FSA on the falsity element, the Court does not address whether a rational jury could find for FSA on other elements, providing alternate grounds to deny Campagnolo's motion for partial summary judgment.

ORDER
PAGE - 12

conclude, EFBe merely calculated stiffness and weight and FSA selectively calculated stiffness-to-weight based on cranksets weighed without bottom bracket, a method that systematically overstates the weight of Campagnolo's crankset.  Fifth, a jury could find that statements in the advertisements that FSA's crankset is lighter than "similar" cranksets are literally false because the ads actually compared FSA's more expensive, titanium-axle version against competitors' steel-axle versions.

The Court need not cycle through every way in which a jury might find these advertisements false.  One way is sufficient to find a dispute of material fact as to the falsity element.

Finally, a word must be said about the advertisements' claim that the K-Force Light received a "top performance" award, "a recognition which the German institute confers only to products with the highest quality and performance."  EFBe did award the K-Force Light a "top performance" certification based on its having passed a computer-controlled durability test.  The statement is thus literally true.  However, the statement could be misleading when read in the context of the Chart Ads because it follows a lengthy text discussion of stiffness-to-weight ratio, is located next to graphs of stiffness-to-weight ratio, and does not clarify that the award was given for durability.  A consumer could be misled into thinking the "top performance" award related to stiffness or weight.

**B.  Consumer Deception**

When an advertisement is literally or facially false, consumer deception may be presumed.  *Time Warner Cable, Inc. v. DirecTV, Inc.*, 497 F.3d 144, 153 (2nd Cir. 2007); *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 693 (6th Cir. 2000); *cf. Southland Sod*, 108 F.3d at 1140 (noting that if an advertisement is not literally false, a plaintiff must show the advertisement misled, confused, or deceived consumers).  Because the evidence could support a jury's finding that the advertisements were literally false, as explained above, Campagnolo has met its evidentiary burden with respect to consumer deception.  Even without the presumption, a reasonable jury crediting Campagnolo's evidence could conclude that

ORDER
PAGE - 13

consumers were deceived by advertisements that understated the weight of the K-Force Light available at the time the advertisements were circulated. Dr. Glassman's surveys evidenced that consumers believed the data in the advertisements to be accurate and that a product with the listed properties was available to be purchased. Since a rational jury could conclude from the evidence that a K-Force Light with the listed characteristics was not available for purchase in March 2008 when the advertisements were circulated, the evidence supports a finding of consumer deception. Additionally, the surveys indicated that consumers were influenced by statements that the tests were conducted by an independent laboratory, statements the jury could find to be false.

However, Dr. Glassman's surveys did not ask any questions pertaining to the "top performance" award statements. As explained above, the statement in the advertisements concerning the EFBe "top performance" certificate was literally true but potentially misleading. Since the statement is literally true, Campagnolo must come forward with evidence that consumers were actually misled – that some significant subset of consumers understood the statement to mean that the K-Force Light received a certificate for stiffness or weight, not simply durability. Because Campagnolo produced no such evidence, this theory of falsity fails as a matter of law. *William H. Morris v. Group W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995) ("Where a statement is not literally false and is only misleading in context, however, proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical.") *See Southland Sod*, 108 F.3d at 1140 (literally true but misleading advertisements must be shown to mislead, confuse, or deceive consumers; reactions of the public are typically shown through consumer surveys); *see also Amer. Council of Certified Podiatric Physicians and Surgeons v. Amer. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 614 (6th Cir. 1999) ("A plaintiff relying upon statements that are literally true yet misleading cannot obtain relief by arguing how consumers could react; it must show how consumers actually do react."); *Johnson & Johnson Merck Consumer Pharmaceuticals, Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 298 (2d Cir. 1992) ("[T]he

ORDER
PAGE - 14

success of a plaintiff's implied falsity claim usually turns on the persuasiveness of a consumer survey.").

C.  Materiality

False statements in an advertisement are material if they are likely to influence the purchasing decision. *Southland Sod*, 108 F.3d at 1139. Dr. Glassman's report indicates that relevant consumers were influenced by weight claims standing alone and that stiffness, stiffness-to-weight ratio, and weight are the first, second, and fourth most important characteristics consumers consider when purchasing a crankset. This is sufficient for a finding of materiality. Additionally, a plaintiff may establish materiality by showing that advertisements misrepresent an "inherent quality or characteristic" of the product. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002); *see also Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997) (Second Circuit's requirement that the misrepresentation concern an inherent quality or characteristic of the product is essentially one of materiality). Weight and stiffness-to-weight ratio are important and inherent qualities of cranksets. Accordingly, a jury could conclude that the false statements were material.

D.  Injury

"[A] competitor need not prove injury when suing to enjoin conduct that violates section 43(a)." *Southland Sod*, 108 F.3d at 1145 (quoting *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989)). Since Campagnolo and FSA are direct competitors in the crankset market, Campagnolo would be entitled to an injunction upon a jury finding that the advertisements were materially false and deceived consumers.

Contrary to FSA's contention, the fact that FSA has ceased publishing the advertisements at issue does not moot Campagnolo's claims for injunctive relief. In *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, the Ninth Circuit held that a plaintiff in a Lanham Act case is not required to prove that defendants were likely to violate the Act in the future. 793 F.2d

ORDER
PAGE - 15

1132, 1135 (9th Cir. 1986). For cessation of unlawful conduct to moot claims for injunctive relief, the defendant's reform must be irrefutable and total and defendant bears the burden of meeting that standard. *Id.*; *see Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 190 (2000) ("[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."). As explained below, the jury could find that FSA published false statements willfully. FSA did not cease publishing its web site advertisements until recently, around December 2009. Therefore, injunctive relief may still be appropriate. *See Polo Fashions*, 793 F.2d at 1135 ("If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives Polo substantial protection of its trademark.")

To recover monetary damages for false advertising in violation of the Lanham Act, a plaintiff must prove that he suffered injury in the form of lost sales or damage to goodwill. In this case, Campagnolo does not seek damages for lost sales, only corrective advertising, unjust enrichment, and damage to goodwill. However, "an inability to show actual damages does not alone preclude recovery" under the Act. *Southland Sod*, 108 F.3d at 1146 (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1411 (9th Cir. 1993)). Section 1117 permits the district court to fashion any just monetary award so long as it constitutes "compensation" for the plaintiff's losses or unjust enrichment and is not a penalty. *Id.* Within these bounds, the court must fashion relief based on the totality of the circumstances. *Id.*

A finding of deliberate falsity in cases of comparative advertising gives rise to a rebuttable presumption of injury. *Southland Sod*, 108 F.3d at 1146; *Balance Dynamics*, 204 F.3d at 694; *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1336 (8th Cir. 1997). This is because "a misleading comparison to a specific competing product necessarily diminishes that product's value in the minds of the consumer." *McNeilab, Inc. v. Amer. Home Products Corp.*, 848 F.2d 34, 38 (2d Cir. 1988). In the present case, a reasonable jury could find that FSA willfully and deliberately misrepresented the weight of its crankset and the results of the EFBe test. The evidence supports a conclusion that FSA knew the EFBe test was conducted on an

initial production model; that model was not for sale in 2008; the only model that was available in 2008 was significantly heavier; and consumers would be deceived into thinking that the K-Force Light available for purchase during the ad campaign actually weighed what was listed in the advertisement.  At the same time, FSA strategically chose to present weights of cranksets without bottom brackets in order to mischaracterize the stiffness-to-weight ratio of Campagnolo's crankset, which moved some weight from the bottom bracket to the crankset.  FSA knew that its EFBe data was stale and inapplicable because it was based on an old model, yet it intentionally launched the new advertisement campaign anyway.  Based on this, the jury could conclude that FSA knew its deception in its comparative advertisements would directly harm Campagnolo.  Thus, the presumption of injury could apply in this case.

After establishing the fact of injury, a plaintiff is held to a lower standard of proof in ascertaining the exact amount of damages.  *Harper House*, 889 F.2d at 209.  Because of the difficulty in calculating damages, surrogate measures can be used to estimate damages.  The Ninth Circuit has held that under some circumstances, the amount defendants spent on advertising is a fair estimate of the damage inflicted on plaintiff's goodwill.  *Id.*; *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041 (9th Cir. 1986).  Because a jury crediting Campagnolo's evidence could award monetary relief in its favor, summary judgment is inappropriate.

**E.  Common Law Unfair Competition and Washington Consumer Protection Act Claims**

FSA argues that summary judgment should be granted in its favor on Campagnolo's claims under the Washington Consumer Protection Act ("CPA") and for common law unfair competition because they are substantially congruous with its Lanham Act claims.  The Court agrees that these claims are congruous.  Therefore, FSA's motion for summary judgment on these claims is also denied.

FSA additionally argues that a failure to prove actual damages precludes relief under the CPA.  However, the Washington Supreme Court has held that "nonquantifiable injuries, such as loss of goodwill" are sufficient to meet the injury element of a CPA claim.  *Nordstrom, Inc.*

*v. Tampourlos*, 107 Wash. 2d 735, 740 (1987).  Contrary to FSA's arguments, the more recent decision of *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, does not contradict this proposition.  162 Wash.2d 59, 83 (2007).  That case merely holds that there must be a demonstrable causal link between the misrepresentation and plaintiff's injury.  *Id.*  The jury could easily find that element met here.

### III. CONCLUSION

Material disputes of fact prevent this case from being resolved on summary judgment.  FSA's motion for summary judgment (Dkt. #221) is DENIED.  Campagnolo's motion for partial summary judgment (Dkt. #262) is DENIED.  The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this <u>11</u> day of May 2010.

[signature]

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE