UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAMPAGNOLO S.R.L.,<br><br>           Plaintiff,<br><br>           v.<br><br>FULL SPEED AHEAD, INC., a Washington Corporation, and TIEN HSIN INDUSTRIES, CO., LTD.,<br><br>           Defendants. | CASE NO. C08-1372 RSM<br><br>ORDER GRANTING DEFENDANT TIEN HSIN'S MOTION FOR SUMMARY JUDGMENT |

      This matter comes before the Court on the motion for summary judgment brought by Tien Hsin Industries, Co., Ltd. ("Tien Hsin") (Dkt. #205). Campagnolo S.r.l. ("Campagnolo"), an Italian corporation, brought this false advertising action against Full Speed Ahead, Inc. ("FSA"), a Washington corporation, alleging that advertisements published by FSA misrepresented product characteristics of FSA's and Campagnolo's bicycle cranksets. Tien Hsin is a Taiwan corporation that manufactures the bicycle components that FSA sells to retailers and distributors in North America. Tien Hsin moves for summary judgment on the basis that it had no knowledge of or involvement with the allegedly false advertisements published by FSA, is a separate corporate entity from FSA, and is not vicariously liable for FSA's torts.

ORDER
PAGE - 1

## I.  FACTS

In its May 11, 2010 order, this Court denied FSA's motion for summary judgment on the merits of the underlying false advertising claim because there are genuine disputes of material fact regarding the elements of Campagnolo's claims (Dkt. #327).  The facts of the underlying false advertising dispute are discussed in detail in that order and will not be recounted here.  Only the facts regarding Tien Hsin's relationship with FSA and its involvement in the advertising campaign are relevant to the present disposition.  As this is a motion for summary judgment, the facts are stated in the light most favorable to Campagnolo, the non-moving party.

Tien Hsin manufactures bicycle components which it sells to over one hundred distributors worldwide.  These products are sold under a variety of different brand names, one of which is Full Speed Ahead or FSA.  Full Speed Ahead branded products are sold to FSA in the United States, or Full Speed Ahead, S.r.l. ("FSA-Europe") in Italy.  Those companies in turn sell the products to distributors and retailers in North America and Europe respectively.  FSA primarily sells products that it purchases from Tien Hsin, although on at least one occasion it has purchased and resold a product from one of Tien Hsin's competitors.

Tien Hsin is owned by four shareholders:  Yudi Chiang, her husband Douglas Chiang, Douglas Chiang's mother, and Douglas Chiang's sister.  Yudi Chiang is FSA's sole shareholder.  FSA and Tien Hsin do not share any employees.  FSA is managed by Matt Van Enkenvort.  In the late 1990s, Ms. Chiang formed a distributorship in California to sell bicycle parts in North America.  At some point this distributorship was incorporated as a California corporation, and in 2001 that corporation was moved to Washington and reincorporated as a Washington corporation, FSA.  Van Enkevort testified that prior to 2001 when FSA was reincorporated in Washington, Tien Hsin marketed its products in North America directly and placed advertisements in magazines and sold goods themselves.  Later, however, he admitted that he was not with the company at that time and only knew this information because he, as a product manager for a different company, saw Tien Hsin's products being marketed.

Tien Hsin owns the trademark "FSA." It has no written agreements with FSA regarding the licensing of the trademark; however, Yudi Chiang testified in her declaration that Tien Hsin and FSA have an oral license agreement. Although there are no written agreements of any kind formalizing the relationship between Tien Hsin and FSA, when Tien Hsin sends products to FSA, it invoices FSA in writing.

Van Enkevort makes the day-to-day operating decisions for FSA. He reports to FSA's chairman and sole shareholder, Yudi Chiang, at least once every quarter, providing her with FSA's sales reports and financial data. These reports are sent to Chiang's Tien Hsin e-mail address. Because Van Enkevort manages FSA, neither Yudi Chiang nor Tien Hsin is typically involved in FSA's operations, including advertising. Neither Yudi Chiang nor any Tien Hsin employee directs FSA's advertising campaigns, controls the content of advertisements, directs when advertisements should be published, advises or comments on the advertisements. In fact, Yudi Chiang testified that she had not seen the FSA advertisements at issue in this case until her deposition. Tien Hsin runs its own Taiwanese web site and does not control FSA's web site. Tien Hsin does not advertise FSA branded products on its web site.

Even though Tien Hsin did not directly prescribe the content of FSA's advertisements, Tien Hsin did take some actions that indirectly influenced the ad campaign at issue in this case. First, Tien Hsin publishes a yearly Bike Solutions Manual that contains product information for all of Tien Hsin's products including FSA branded products. FSA often gets technical information regarding FSA branded products from that manual. In this case, the product information on which FSA's ad campaign was based derived from independent testing, not solely from information in the Bike Solutions Manual, although the record is unclear whether the same product information in the advertisements in this case was also contained in the Bike Solutions Manual. Secondly, Tien Hsin provided FSA-Europe with the prototype crankset that was independently tested, data from which was the basis of the ad campaign. FSA-Europe, not Tien Hsin, however, decided to have the prototype tested. Third, Tien Hsin sells the crankset that is the subject of the advertisements to FSA, which then advertises and resells the crankset.

ORDER
PAGE - 3

Although Tien Hsin does not directly pay FSA to conduct advertising, Tien Hsin indirectly compensates FSA to conduct some advertising on its own behalf and for the benefit of Tien Hsin. FSA purchases products from Tien Hsin at prices determined by a formula. According to Van Enkevort, that formula sets "a very aggressive price," lower than the price other distributors would receive, that allows FSA to be profitable reselling goods to other distributors "and also to engage in marketing." Any marketing conducted by FSA for its FSA products benefits Tien Hsin as well as FSA because the products originate from Tien Hsin and Tien Hsin owns the FSA trademark. When FSA meets with its customers, distributors and original equipment manufacturers, it meets on behalf of itself. However, as many of these customers do significant business in Asia, they often buy products directly from Tien Hsin. Van Enkevort testified that "it is understood between [Tien Hsin and FSA]" that the low price FSA receives on Tien Hsin's products compensates FSA for its sales efforts that do not directly bring in compensation for FSA.

The licensing agreement and pricing formula create a close business relationship between FSA and Tien Hsin in which Tien Hsin benefits from FSA's activities. This relationship is close enough that Van Enkevort referred to FSA as "our [Tien Hsin's] U.S. company" or "the U.S. office." Additionally, on some special occasions, Yudi Chiang will ask Van Enkevort to negotiate business deals on behalf of Tien Hsin because Yudi Chiang and her husband do not speak fluent English. On these special occasions, Tien Hsin makes the substantive decisions regarding what to accept, but Van Enkevort communicates Tien Hsin's position. For example, in 2007, Van Enkevort helped negotiate a license agreement between Cane Creek Cycling Components, Inc. ("Cane Creek") and Tien Hsin as a means of settling a royalty claim. Prior to that negotiation, Douglas Chiang sent an e-mail to Cane Creek's president explaining that Van Enkevort would represent Tien Hsin as to the license and royalty matters.

ORDER
PAGE - 4

## II.  DISCUSSION

Campagnolo bases its claims against Tien Hsin both on a theory of "direct" liability and vicarious liability for FSA's actions.  First, Campagnolo argues that Tien Hsin and FSA were joint actors in the advertising campaign, Tien Hsin participated directly, and Tien Hsin contributed to the false advertising.  Second, Campagnolo argues that Tien Hsin is vicariously liable for FSA's torts first because Tien Hsin and FSA are alter egos of one another – in other words a single entity – or second, because FSA acts as Tien Hsin's agent.

The Court applies the familiar summary judgment standard.  Summary judgment may only be granted where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Proc. 56(c).  If a jury believing the non-moving party's evidence and making reasonable inferences in its favor could return a verdict for the non-moving party, summary judgment must be denied.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**A.  Liability for Tien Hsin's Own Actions**

Plaintiff first claims that Tien Hsin is "directly liable for false advertising" (Dkt. #258 at 11).  This claim lacks merit.  Uncontroverted evidence establishes that no Tien Hsin employees contributed to FSA's advertisements, commissioned the advertisements, reviewed the advertisements, or participated in their creation or dissemination in any way.  Plaintiff points to Tien Hsin's dissemination of its Bike Solutions Guide to FSA as a basis for liability.  However, there is no evidence that FSA's advertisements were based off the Bike Solutions Guide or that Tien Hsin intended the information in the Bike Solutions Guide to be the basis for an FSA advertising campaign.  Indeed uncontradicted testimony from FSA witnesses, and the text of the advertisements themselves, indicate that the numbers in FSA's advertisements were derived from independent testing by a German laboratory, not from any Tien Hsin publication.  It is not clear that the Bike Solutions Guide contained information or language similar to the FSA advertisements since it is not part of the record.  Campagnolo does not


allege that the Bike Solutions Guide is itself a false advertisement. These facts do not establish any liability.

It is also of no help to Campagnolo that Tien Hsin provided FSA-Europe with the crankset that was eventually tested by a German laboratory, providing the data that became the basis of FSA's advertisements. There is no evidence that Tien Hsin provided that crankset to FSA-Europe in 2006 for the purposes of creating advertisements. Even if such a fact were established, there is no evidence that Tien Hsin had a hand in misusing that 2006 testing data to create false or misleading advertisements in 2008.

Plaintiff contends that Tien Hsin may be contributorily liable for false advertising by intentionally inducing FSA to create false advertisements. Inducement is a cognizable theory of liability for false advertising. In *Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.*, the Second Circuit held that a defendant could be contributorily liable for false advertising for "intentionally directing, approving, authorizing, drafting and/or editing" the advertisements in question. 380 F.3d 126, 133 (2d Cir. 2004). In this case, however, there is no evidence of any inducement as no Tien Hsin employees were involved with the advertisements. The evidence suggests that Tien Hsin may have contemplated through its pricing arrangement that FSA would advertise and Tien Hsin would benefit as the owner of the FSA trademark, but Tien Hsin did not direct or control the advertisements nor induce FSA to make its advertisements false.

Lastly, Campagnolo points to trademark infringement cases stating that one may be contributorily liable for infringing a trademark if one continues to supply a product knowing that the recipient is using the product to engage in trademark infringement. *See Fonovisa, Inc. v. Cherry Auction, Inc.* 76 F.3d 259, 264 (9th Cir. 1996) (citing *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854-55 (1982)). Campagnolo cites no cases, however, and the Court has found none, holding that a defendant may be subject to liability for false advertising by selling a product which is falsely advertised by the buyer. Campagnolo fails to provide any argument as to why the doctrines applicable to contributory trademark infringement should apply to false advertising. In any case, on these facts where

ORDER
PAGE - 6

there is no evidence that Tien Hsin had knowledge of the advertisements, or more importantly the their falsity, the Court holds that it is not liable as a matter of law.

## B. Vicarious Liability

Campagnolo's vicarious liability theory is based on Tien Hsin's relationship with FSA, not any particular action Tien Hsin took in connection with FSA's advertisements. First, Campagnolo argues that Tien Hsin and FSA are "intertwined" such that they act as a single entity. Since FSA is merely Tien Hsin's alter ego, Campagnolo argues, the corporate form should be disregarded and Tien Hsin should be held liable for FSA's acts. Secondly, but relatedly, Campagnolo contends that Tien Hsin is responsible for torts committed by FSA because FSA is Tien Hsin's agent.

Analyzing the facts in the light most favorable to Plaintiff, it is clear that FSA and Tien Hsin are closely related. FSA exists almost solely to distribute Tien Hsin's products in North America. It rarely sells any other product. Tien Hsin owns the FSA trademark, which it licenses to FSA without any written contract. When Tien Hsin sells its product to FSA, it does so at an aggressively low price with the understanding that FSA will use the profit to advertise. The more FSA advertises, the more the value of the FSA brand, which Tien Hsin owns, increases, and the more product Tien Hsin can sell through FSA. Additionally, FSA, at least on occasion, conducts negotiations on behalf of Tien Hsin.

These facts demonstrate a relationship between FSA and Tien Hsin that is akin to a subsidiary-parent relationship. At least at a high level, Tien Hsin has the power to control FSA because it supplies substantially all the products FSA sells and owns the FSA trademark. FSA is wholly owned by one of Tien Hsin's four shareholders who is related through marriage to the other three shareholders. That relationship is crucial to FSA. It is not an ordinary business practice for an independent company to have the trademark to its own name owned by a completely unrelated company, especially when there is no written agreement guaranteeing a continued license to that mark. FSA cannot function independently; it needs Tien Hsin to provide its products and its trademark. The current arrangement only works for

ORDER
PAGE - 7

FSA because Yudi Chiang and her immediate family own both Tien Hsin and FSA. In this sense, then, FSA operates as Tien Hsin's subsidiary even though Tien Hsin does not own any of FSA's stock directly.

That FSA's relationship with Tien Hsin is similar to a subsidiary-parent relationship is further supported by Van Enkevort's reference to FSA as Tien Hsin's Washington office and "our U.S. company." It also explains why FSA occasionally does business on behalf of Tien Hsin or is willing to meet with customers who ultimately buy from Tien Hsin directly.

That FSA acts like Tien Hsin's subsidiary is only the beginning of the vicarious liability inquiry, however. The Court next analyzes Campagnolo's alter ego and agency theories with the background understanding that, while Tien Hsin technically does not own FSA, it in fact acts as its parent.

1. <u>Alter Ego</u>

Although FSA and Tien Hsin are clearly related entities with aligned interests, there is no question that they are separately incorporated companies. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). This general principle is only violated in "exceptional cases." *Culinary Workers & Bartenders Union v. Gateway Cafe, Inc.*, 91 Wash. 2d 353, 366 (1979). "To pierce the corporate veil and find a parent corporation liable, the party seeking relief must show that there is an overt intention by the corporation to disregard the corporate entity in order to avoid a duty owed to the party seeking to invoke the doctrine." *Minton v. Ralston Purina Co.*, 146 Wash. 2d 385, 397 (2002).[1] "The alter ego theory . . . is applied when the corporate entity has been

---

[1] Tien Hsin notes that there is much uncertainty regarding whether state or federal veil-piercing law should be applied. Campagnolo does not discuss the issue, but cites to both federal and state cases in support of its alter ego argument. The Court need not decide which law applies because the law is similar, if phrased differently, and the outcome in this case is the same regardless of which law applies.

ORDER
PAGE - 8

disregarded by the principals themselves so that there is such a unity of ownership and interest that the separateness of the corporation has ceased to exist." *Grayson v. Nordic Construction Co., Inc.*, 92 Wash. 2d 548, 552 (1979). On the other hand, "[w]hen the shareholders of a corporation . . . conscientiously keep the affairs of the corporation separate from their personal affairs, and no fraud or manifest injustice is perpetrated upon third persons who deal with the corporation, the corporation's separate entity should be respected." *Id.*

Under Washington law, a plaintiff seeking to pierce the corporate veil must show (1) that the corporate form was intentionally used to violate or evade a duty, and (2) disregard of the corporate form is necessary to prevent unjustified loss to the injured party. *Meisel v. M&N Modern Hydraulic Press Co.*, 97 Wash. 2d 403, 410 (1982). The first element requires an abuse of the corporate form, which typically involves "fraud, misrepresentation, or some form of manipulation of the corporation to the stockholder's benefit and creditor's detriment." *Id.* (quoting *Truckeweld Equip. Co. v. Olson*, 26 Wash. App. 638, 645 (1980)). The second element requires that the wrongful corporate activities cause the harm suffered by the party seeking relief. *Id.* "The absence of an adequate remedy alone does not establish corporate misconduct. The purpose of a corporation is to limit liability." *Id.* at 411.

Federal veil-piercing law in the Ninth Circuit is similar. First, the court must find (1) that there is "such a unity of interest and ownership between the corporation and the shareholder that the two no longer exist as separate entities," and (2) that failure to disregard the corporate form would result in fraud or injustice. *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 111 (9th Cir. 1979); *see also Igen Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 309 n.5 (4th Cir. 2003) (noting that under Delaware law "to pierce the corporate veil based on an agency or 'alter ego' theory, "the corporation must be a sham and exist for no other purpose than as a vehicle for fraud"). The court should consider the degree to which the separate identity of the parent and subsidiary were maintained, the degree of injustice visited on the litigants by recognizing separate entities, and fraudulent intent. *Id.* That a creditor may be unsatisfied is not an injustice warranting

ORDER
PAGE - 9

piercing the corporate veil. *United States v. Standard Beauty Supply Stores, Inc.*, 561 F.2d 774, 777 (9th Cir. 1977).

The facts of this case, interpreted in the light most favorable to Campagnolo, do not support an alter ego finding. There is no evidence that any corporate formalities were disregarded.[2] FSA and Tien Hsin have separate offices, assets, and employees. FSA pays its own employees. Tien Hsin does not supervise any FSA employees. Tien Hsin does not finance FSA. There is no evidence that FSA is inadequately capitalized. *See Commodity Futures Trading Commission v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1112-13 (9th Cir. 2000) (noting that undercapitalization is a significant factor in veil-piercing analysis).[3]

There is also no indication that Tien Hsin abused the corporate form to avoid a duty, and no evidence of fraud. The evidence shows only that FSA and Tien Hsin have a close relationship and nearly perfectly aligned business interests. That is true in the case of most parent-subsidiary relationships, but it is not grounds for piercing the corporate veil. In *J.I. Case Credit Corp. v. Stark*, 64 Wash. 2d 470, 475 (1964), the Supreme Court of Washington held that the corporate veil should not be pierced even where the facts indicated: (1) one corporation was a wholly owned subsidiary of the other; (2) the secretary-treasurer of one was the president of the other; (3) all employees of the subsidiary were paid by the parent; (4) both companies had the same address, credit managers, lawyers, nonresident agents and auditors; and (5) the subsidiary was in business only to handle retail financing for the parent. Accordingly, the corporate form in the present case, which has none of those factors, must not be disregarded.

---

[2] Contrary to Campagnolo's contention, that Yudi Chiang receives financial reports at her Tien Hsin e-mail address is not evidence of corporate disregard.

[3] *See also Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1221 (10th Cir. 1997) (listing ten factors to consider in determining whether the corporate veil should be pierced).

ORDER
PAGE - 10

2. <u>Agency</u>

Campagnolo argues that Tien Hsin is liable for torts committed by FSA because FSA is an agent of Tien Hsin. A principal may be liable for the acts of his agent if those acts are on the principal's behalf and within the scope of the agency. *See Scott v. Ross*, 140 F.3d 1275, 1281 (9th Cir. 1998) (applying Washington law). An agency relationship requires (1) consent and (2) control. *Moss v. Vadman*, 77 Wash. 2d 396, 403 (1970). An agency may arise without an express agreement, but "it does not exist unless the facts, either expressly or by inference, establish that one person is acting at the instance of and in some material degree under the direction and control of the other." *Matsumura v. Eilert*, 74 Wash. 2d 362, 368 (1968). "It arises from manifestations that one party consents that another shall act on his behalf and subject to his control, and corresponding manifestations of consent by another party to act on behalf of and subject to the control of another." *Id.* Control is often the crucial factor. "Control is not established if the asserted principal retains the right to supervise the asserted agent merely to determine if the agent performs in conformity with the contract. Instead, control establishes agency only if the principal controls the manner of performance." *Uni-Com Northwest, Ltd. v. Argus Publishing Co.*, 47 Wash App. 787, 796-97 (1987).

It is not clear, however, that this agency analysis applies where the asserted principal and the asserted agent are separately incorporated entities. None of the cases cited by Campagnolo, nor any of the cases cited above by the Court, involve corporations acting as agents for parent corporations.[4] A corporation's managers always act as agents for its shareholders – the principals. Yet even where a subsidiary is wholly owned, the parent corporation – the shareholder or principal – is generally not liable for the subsidiary's torts. *See, e.g.*, *Bestfoods*, 524 U.S. at 61. The purpose of incorporation is to override the common law principal-agent relationship to limit liability.

---

[4] Campagnolo does cite to *Chan v. Society Expeditions*, 39 F.3d 1398 (9th Cir. 1994), and *Gallagher v. Mazda Motor of Am., Inc.*, 781 F. Supp. 1079 (E.D. Pa. 1992). These cases analyze the circumstances necessary for finding a subsidiary to be a general agent of the parent for purposes of personal jurisdiction. That inquiry is separate from a vicarious liability inquiry, and thus, these cases are inapposite.

ORDER
PAGE - 11

Thus the Court doubts whether alter ego and agency theories for parent liability are in fact separate. *See Igen,* 335 F.3d at 309 n.5 (discussing test "to pierce the corporate veil based on an agency or 'alter ego' theory"); *A.G. Nelson v. Int'l Paint Co., Inc.*, 734 F.2d 1084, 1092 (5th Cir. 1984) (equating alter ego inquiry with inquiry into whether corporation is a "mere agent" or "conduit" of another). To the extent the theories are separate, agency liability in the corporate context must require more than the agency affiliation present in all parent-subsidiary relationships. *See Uni-Com*, 47 Wash. App. at 798 (noting that to hold shareholder liable for corporation's wrongs "would seem to be a disguised way of finding corporate disregard").

To hold a parent liable on an agency theory requires that the parent exercise total control over the subsidiary, well beyond the normal control exercised by parents over subsidiaries. *See Igen*, 335 F.3d at 309 n.5 ("[M]ere control and even total ownership of one corporation by another is not sufficient to warrant the disregard of a separate corporate entity") (internal quotation omitted). Courts look to see if the parent exercises "complete domination" over the subsidiary or whether the subsidiary is a shell corporation, *Japan Petroleum v. Ashland Oil, Inc.*, 456 F. Supp. 831, 845 (D. Del. 1978), or whether "the parent specifically directs the actions of its subsidiary, using its ownership interest to command rather than merely cajole," *Esmark, Inc. v. Nat'l Labor Relations Bd.*, 887 F.2d 739, 757 (7th Cir. 1989). A parent has no liability on an agency theory where it does not "direct[] and authorize[] the *manner* in which the subsidiary conduct[s] its business." *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 289 (2007) (emphasis in original) (considering veil-piercing law of numerous jurisdictions). Whether the parent and subsidiary respected corporate formalities is relevant to the question of whether the parent so dominated the subsidiary that the subsidiary is a mere agent of the parent. *See Esmark*, 887 F.2d at 758-59.

Turning to the case before the Court, Tien Hsin is able to exercise some control over FSA owing to its ownership of the FSA trademark, Yudi Chiang's stock ownership, and Tien Hsin being nearly the sole-supplier of FSA's goods. But Tien Hsin does not exercise total domination over FSA sufficient to be vicariously liable. FSA is not a sham nor a shell

corporation. Tien Hsin does not exercise any control over the day-to-day operations of FSA. There is no overlap between Tien Hsin employees and FSA employees, and the latter do not report to the former. Specifically, there is no evidence that Tien Hsin exercises any oversight over the content of FSA's advertising campaigns. Although, Tien Hsin's pricing arrangement with FSA contemplates that FSA will advertise and Tien Hsin will benefit from that advertisement as the trademark owner and goods supplier, Tien Hsin does not control the manner of that advertisement. As far as the record shows, on the rare occasions when Van Enkevort would negotiate on behalf of Tien Hsin, Tien Hsin's directors explicitly authorized it in writing.[5] In short, there are no exceptional circumstances present that would justify holding Tien Hsin liable for torts committed by a separately incorporated entity. *See Japan Petroleum*, 456 F. Supp. 831 (cited in *Uni-Com*, 47 Wash. App. at 798) (no agency liability where parent held voting shares of the subsidiary; parent and subsidiary had common officers and directors; parent loaned money to subsidiary; parent benefited from subsidiary's operation; parent and subsidiary had joint management and joint operations). Accordingly, summary judgment is GRANTED in favor of Tien Hsin.

**C. Attorneys' Fees**

Tien Hsin moves for attorneys' fees on the grounds that Campagnolo's claims are "groundless, unreasonable, vexatious, or pursued in bad faith." (Dkt. #205 at 14); *see Gracie v. Gracie*, 217 F.3d 1060, 1071 (9th Cir. 2000). The motion is DENIED.

//
//
//
//
//
//

---

[5] *See* Dkt. #105.

ORDER
PAGE - 13

## III. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Tien Hsin's Motion for Summary Judgment (Dkt. #205) is GRANTED.

(2) Tien Hsin's request for attorneys fees is DENIED.

(3) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this 20th day of May 2010.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE